Jodi E. Lopez (SBN 231117)
jlopez@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street
Los Angeles, CA 90013
Telephone: +1 (213) 896-6000
Facsimile: +1 (213) 896-6600

Attorneys for Applicant
BEACON SALES ACQUISITION, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

IN RE *EX PARTE* APPLICATION BEACON SALES ACQUISITION, INC. FOR AN ORDER GRANTING LEAVE TO ISSUE A SUBPOENA PURSUANT TO 28 U.S.C. § 1782

Applicant.

Case No.

**BEACON SALES ACQUISITION, INC.'S MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER GRANTING LEAVE TO ISSUE A SUBPOENA PURSUANT TO 28 U.S.C. § 1782**

Application, Declaration of James W. Ducayet, Declaration of Kyunghoon Lee, Affidavit of David Jenkins, and [Proposed] Order Filed Concurrently

## INTRODUCTION

In this *ex parte* application, Beacon Sales Acquisition, Inc. ("Beacon"), as successor in interest to Allied Building Products Corp. ("Allied"),[1] seeks an order under 28 U.S.C. § 1782(a) to take discovery from S-Energy America, Inc. ("S-Energy") – a corporation registered in the state of California, and headquartered in Orange County – for use in a lawsuit S-Energy brought against Allied in the Republic of Korea. S-Energy's chosen forum in the Republic of Korea does not provide a mechanism for compelling S-Energy to produce the evidence that Allied seeks and likely will prove Allied's defenses. Therefore, Allied has no choice but to seek relief from this Court. The Korean Litigation arises from Allied's business relationship with S-Energy, which supplied solar panels to Allied in 2017 and 2018. In the Korean Litigation, S-Energy alleges that Allied breached the parties' contract by refusing to accept delivery and pay for solar panels in early 2018. This application seeks documentary and testimonial evidence critical to Allied's defense of S-Energy's claims in the Korean Litigation and Allied's potential counterclaims. As explained below, the Court should grant the application and allow Beacon to serve the subpoena attached as Exhibit A to the Declaration of James W. Ducayet (filed concurrently).

## BACKGROUND

### A. The Relationship Between Allied and S-Energy.

Allied is a New Jersey-based supplier of residential and commercial building products to contractors in the building and remodeling industries. *See* Affidavit of D. Jenkins ¶ 1 ("Jenkins Aff.") (filed concurrently). In 2008, Allied entered the solar distribution business, and is now a national leader in the distribution of solar panels, mounting hardware, inverters, and accessories to contractors of both commercial and residential projects. *See* Allied Solar Division Website, Home Page,

---

[1] In 2018, Allied became part of Beacon as a result of the merger of Allied with and into Allied Building Products LLC, and the subsequent merger of Allied Building Products LLC with and into Beacon. Beacon therefore brings this application on behalf of Allied as its successor in interest.

https://www.alliedsolarproducts.com/ (last visited June 26, 2019). Beginning in 2013, Allied sourced solar panels from Hyundai Heavy Industries ("Hyundai") based in Korea and Sam Youn was the sales representative responsible for the Allied relationship. Jenkins Aff. ¶ 3.

In 2016, Hyundai announced that it would reduce its product offerings in the U.S. and shift its focus to other markets. *Id*. Youn then left Hyundai and began selling solar panels manufactured by S-Energy, which was trying to grow its business in the U.S. *Id*. S-Energy is the U.S. subsidiary of S-Energy Co., Ltd. ("S-Energy Korea"), which is a Korean entity that was spun-off from Samsung Electronics. *Id*. ¶ 4. S-Energy Korea advertises itself as "one of the . . . industry's oldest and most experienced [photovoltaic] module manufacturers" and "one of the most financially stable global [photovoltaic] module OEMs" in the industry. *See* Ducayet Decl. Ex. B at 2, Ex. C at 3.

In October 2016, Youn introduced Allied to S-Energy's president, David Young Jin Kim, and the two companies began exploring a business relationship. Jenkins Aff. ¶ 4. As part of that process, Allied did substantial due diligence on S-Energy's products and capabilities, including S-Energy's ability to offer prices competitive with the largest Chinese manufacturers and flexible delivery dates. *Id*. ¶¶ 4–5. During the diligence process, Allied made it clear that, as a condition of doing business, S-Energy had to provide flexible delivery dates, but also be able to quickly deliver solar panels when Allied's customers needed them. *Id*. ¶ 5. Based on S-Energy's assurances that it could offer competitive prices, strong support, and flexible delivery dates, Allied agreed to become S-Energy's primary U.S. distributor in late 2016. *Id*. ¶¶ 4–5. On January 6, 2017, Allied and S-Energy executed a master purchase order to govern their relationship. Ducayet Decl. Ex. D.

The relationship between Allied and S-Energy started off well. Jenkins Aff. ¶ 7. During the first half of 2017, S-Energy kept its promise by supplying high quality products at competitive prices, while providing strong customer support and flexible delivery dates. *Id*. S-Energy quickly became Allied's top solar panel supplier, and

Allied increasingly relied on S-Energy to meet the its customers' demands. *Id*.

**B. The Allied/S-Energy Relationship Deteriorates.**

Unfortunately, this mutually beneficial relationship did not last long. In the second quarter of 2017, S-Energy started falling behind on delivery of outstanding orders and ignored Allied's repeated requests to confirm a delivery schedule. Jenkins Aff. ¶ 8. When S-Energy finally responded, it made clear that it could not fulfill Allied's outstanding purchase orders and that it wanted to renegotiate the parties' contract. *See id*. On July 24, 2017, S-Energy informed Allied that it could only supply 69 containers for the remainder of 2017, rather than the 95 containers Allied had ordered, and that it would deliver many of the containers in November and December, rather than on Allied's requested schedule. *See id*. ¶ 9, Annex 9a. Around the same time, S-Energy demanded that Allied execute a new contract to account for the possibility of U.S. tariffs on imported solar panels. On July 31, 2017, Allied and S-Energy executed the General Terms and Conditions for Sales, Delivery and Payment of Photovoltaic Products Supplied by S-Energy. Ducayet Decl. Ex. E. In late November and December 2017, Allied accepted 52 containers of solar panels. Jenkins Aff. ¶ 9.

The relationship between S-Energy and Allied continued to deteriorate throughout the early part of 2018. At that point, Allied was struggling to distribute its inventory of S-Energy solar panels, including the panels delivered in late 2017, because of an unexpected decline in the market price. Jenkins Aff. ¶ 10. Notwithstanding this excess inventory, S-Energy tried to deliver 18 more containers of solar panels without confirming delivery dates with Allied in advance. *Id*. Allied did not accept delivery of these containers because the unsold containers had created a shortage of space in Allied's warehouses. *Id*. At the same time, S-Energy demanded that Allied increase the price it was willing to pay for solar panels subject to outstanding purchase orders, notwithstanding that the market price for solar panels had fallen substantially. *Id*. ¶ 11.

In March 2018, S-Energy and Allied met to discuss a path forward for their relationship, including S-Energy's demand for higher prices and Allied's frustration

with the lack of communication about delivery schedules. *Id.* ¶ 12. That discussion resulted in Allied re-issuing 87 purchase orders ("Revised POs"), at an above-market blended price, to memorialize its commitment to negotiate with S-Energy in good faith about delivery dates and prices for the remainder of the year. *Id*. Consistent with Allied's commitment, Allied accepted delivery of panels from 13 of the Revised POs. *Id*. ¶ 14. Allied continued to negotiate in good faith with S-Energy about delivery dates for the remaining 74 purchase orders. *Id*. ¶¶ 13–14.

### C. S-Energy Sells Allied's Solar Panels.

While Allied and S-Energy continued these negotiations, S-Energy began to suffer financially. In an effort to beat tariffs on imported solar panels, S-Energy had rushed solar panels to the U.S. in November and December 2017. *See id.* ¶ 14.When S-Energy could not immediately deliver the imported panels, S-Energy stored them in its U.S. warehouses, which cost S-Energy $30,000 per month. *Id*. These warehousing expenses eroded S-Energy's cash position, eventually leading to $3,000,000 in losses. *Id*. Given its deteriorating finances, S-Energy began—without Allied's knowledge—selling the solar panels covered by the Revised POs in its U.S. warehouses to unrelated third parties, including Allied's competitors and customers, at a price lower than S-Energy had ever offered to Allied. *Id*.

### D. The Korean Litigation.

On September 29, 2018, S-Energy sued Allied in Seoul Central District Court in the Republic of Korea. *S-Energy America, Inc. v. Allied Building Products Corp.*, Case No. 2018Gahap585603 ("Korean Litigation"). Ducayet Decl. Ex. F. The complaint alleges that Allied breached its contract with S-Energy by refusing to take delivery of the solar panels and failing to pay the purchase price listed in the Revised POs. *Id*. at 2. As damages, S-Energy seeks the difference between the price listed in the Revised POs and the price at which S-Energy sold panels to third parties, warehousing costs, and "delay fees." *Id*. at 4. Allied will answer the complaint before August 9, 2019.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this *ex parte* application under 28 U.S.C. § 1331 and 28 U.S.C. § 1782(a). *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 189 (3d Cir. 1999); *see also Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 552 (5th Cir. 2012). Although *ex parte* applications are normally disfavored, it is common for applicants to file, and courts to grant, *ex parte* applications under § 1782(a) because the individual or entities subject to discovery "will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery." *IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014); *accord Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications" under § 1782(a) *ex parte* because the respondent "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."). Whether to grant a § 1782 application is left to the Court's discretion. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260 (2004).

## ARGUMENT

Courts evaluate § 1782 applications using a two-step process. First, the court decides whether the statute's "modest prima facie elements" are met. *In re Wallis*, No. 18-mc-80147-DMR, 2018 WL 5304849, at *4 (N.D. Cal. Oct. 24, 2018) (quoting *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998)). Second, if those elements are met, the court then considers whether to grant the application by analyzing the discretionary factors laid out in the Supreme Court's *Intel* decision. *Id*. (citing *Intel*, 542 U.S. at 264–65). As explained below, Allied's application satisfies the statutory elements and all of the *Intel* factors weigh in favor of granting the application.

### I. THE APPLICATION SATISFIES THE STATUTORY ELEMENTS.

Section 1782(a), by its terms, mandates only a "prima facie showing" that (1) the application is made by an "interested person," (2) that the information sought is "for use in a proceeding in a foreign or international tribunal," and (3) that the application

seeks discovery from a person or entity that "resides or is found" in the district in which the application is filed. *In re MacDonell*, No. 2:17-mc-00189 TLN AC, 2017 WL 6448050, at *2 (E.D. Cal. Dec. 15, 2017) (quoting *Bayer*, 146 F.3d at 193). Beacon's petition satisfies each of these elements.

*First*, Allied is undoubtedly an "interested person" with respect to the Korean Litigation. The Supreme Court has held "litigants are included among, and may be the most common example of, the interested persons who may invoke § 1782." *Intel*, 542 U.S. at 256 (noting that "interested persons . . . includes . . . litigants, foreign sovereigns, and the designated agents of those sovereigns") (internal quotation marks omitted). The complaint names Allied as a defendant and seeks a judgment against Allied of almost $4 million. Under *Intel*, Allied's status as a litigant in the Korean Litigation satisfies the first statutory element.

*Second*, the information Allied seeks is "for use in a foreign proceeding"—namely, the Korean Litigation. The subpoena Allied intends to serve seeks testimony and documents that are relevant to Allied's defense in the Korean Litigation and Allied's potential counterclaims, including documents and communications related to the Revised POs, S-Energy's unilateral decision to cancel certain of the Revised POs, and S-Energy's sales of solar panels to Allied's customers and competitors. Documents and testimony on these subjects bear on whether Allied had a contractual obligation to accept unscheduled deliveries from S-Energy and breached the parties' agreement by rejecting deliveries in early 2018. The second statutory factor therefore is also satisfied.

*Third*, S-Energy "resides or is found" in the Central District of California. According to the California Secretary of State, S-Energy is registered to do business in the California and its principal place of business is located at 18022 Cowan Street, Suite 260, Irvine, CA 92614. Ducayet Decl. Ex. G. The City of Irvine is in Orange County, which resides in this district. 28 U.S.C. § 84(c)(3) ("The Southern Division" of the Central District of California "comprises Orange County"). S-Energy also has appointed an agent for the service of process in California, Moon Gyo Hong, who can

be served at its principal place of business. *Id*. Allied's application therefore satisfies the final statutory element.

## II. ALL THE *INTEL* FACTORS FAVOR GRANTING THE APPLICATION.

In *Intel*, the Supreme Court identified four factors that are relevant to a court's exercise of discretion under § 1782:

1. Whether the material sought is within the foreign tribunal's jurisdiction;
2. "[T]he nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
3. "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States";
4. whether the request is "unduly intrusive or burdensome"

*Intel*, 542 U.S. at 264–65; *In re Judicial Assistance Pursuant to U.S.C. Sec. 1782 ex rel. Macquarie Bank Ltd.*, No. 2:14-cv-0797-GMN-NJK, 2014 WL 7706908, at *3–4 (D. Nev. June 4, 2014) ("*Macquarie Bank*"). As explained below, each of these factors weighs in favor of granting the application.

*First*, the material sought in this application is not within the Korean Court's jurisdictional reach because the Seoul Central District Court cannot order S-Energy to produce the discovery requested in the subpoena attached hereto. *See Macquarie Bank*, 2014 WL 7706908, at *3 (first *Intel* factor weighed in applicant's favor because "the applicable discovery rules are more limited than provided by the discovery rules applicable here" and Dutch courts were unable "to order the discovery sought"); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("*Servicio*") (first *Intel* factor weighed in applicant's favor because "a Venezuelan court apparently cannot order [a party] to produce the requested insurance document[s] unless [the requesting party] has detailed information about the nature and extent of the documentation"). Under the Korean Civil Procedure Act, Allied cannot request that S-Energy produce relevant categories of documents. Declaration of Kyunghoon Lee ¶ 5 ("Lee Decl.") (filed concurrently). Instead, Allied must identify every document it

believes S-Energy should produce in the Korean Litigation. However, because the documents sought are primarily either internal communications between S-Energy personnel or communications between S-Energy and its customers, Allied has no ability to specifically identify each individual document. *Id*. These types of restrictions put the requested documents outside of the Korean court's jurisdictional reach, and thus the first *Intel* factor weighs in favor granting Allied's application. *See Macquarie Bank*, 2014 WL 7706908, at *3; *Servicio*, 354 F. Supp. 2d at 274.

*Second*, Section 1782 applications have been routinely granted in aid of foreign litigation proceedings, and there is no reason that the Seoul Central District Court would be unreceptive to discovery obtained via § 1782. Lee Decl. ¶¶ 6–7; *see also In re Application of PQ Corp. for* Ex Parte *Order to Obtain Discovery for Use in Foreign Proceedings*, No. 6:13-mc-9-Orl-36KRS, 2013 WL 3270407 at *6 (M.D. Fla. June 26, 2013) (finding Korean attorney's declaration that "it is high [sic] likely that the Korean courts would welcome" the information sought through a Section 1782 application, sufficient to satisfy the second discretionary factor). There is no Korean law or rule of procedure that would prohibit Allied from making this request or obtaining the discovery requested. Lee Decl. ¶ 6. Moreover, the Republic of Korea has acceded to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters and requested § 1782 assistance in the past. *Id*.; *see also In re Request for Judicial Assistance from Seoul Dist. Criminal Court, Seoul, Korea*, 555 F.2d 720 (9th Cir. 1977); *In re Request for Int'l Judicial Assistance from the Nat'l Court Admin. of the Republic of Korea*, No. C15-80069 MISC LB, 2015 WL 1064790 (N.D. Cal. Mar. 11, 2015).

*Third*, this application is not an attempt to circumvent foreign proof-gathering restrictions or other policies. *See, e.g.*, *Macquarie Bank*, 2014 WL 7706908, at *3 (third *Intel* factor weighs in applicant's favor "[w]here foreign countries have adopted limited discovery rules but allow parties to use broader discovery obtained pursuant to § 1782"). Although Allied is unable to get the discovery it seeks in Korea, such a "procedural discovery limitation" does not weigh against granting the application. *Servicio*, 354 F.

Supp. 2d at 275 (*Intel* recognizes "that a foreign court's procedural discovery limitations, as opposed to substantive limits on the admissibility of discovered evidence, should not prevent a district court from enabling a foreign litigant to obtain admissible evidence here pursuant to Section 1782"). Allied is simply trying to obtain critical documentary and testimonial evidence for its defense of S-Energy's claims in the Korean Litigation and for potential counterclaims, which courts hold is entirely proper. *See id.* (third *Intel* factor weighs in applicant's favor where application is "a reasonable effort to overcome a technical limitation of Venezuelan discovery rules in order to obtain documents that are critical to its defenses from a corporation located within this District.").

*Fourth*, neither the application nor the discovery sought is unduly intrusive or burdensome. Discovery under § 1782 must be produced "in accordance with the Federal Rules of Civil Procedure," including Rules 26 and 45. 28 U.S.C. § 1782(a). Under Rule 26(b)(1), parties are entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense," subject to the requirement that the request be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the Application seeks only narrow categories of documents and deposition testimony that concern issues at the heart of the Korean Litigation, including *inter alia* documents regarding the Revised POs, S-Energy's unilateral decision to cancel the Revised POs, and S-Energy's decision to sell Allied's solar panels directly to its customers and competitors.

**CONCLUSION**

For these reasons, Beacon respectfully requests that the Court issue an order pursuant to 28 U.S.C. § 1782 permitting the service of the subpoena attached as Exhibit A to the Declaration of James W. Ducayet that accompanies this memorandum.

Date: July 25, 2019

Respectfully Submitted,

**Beacon Sales Acquisition, Inc.**

By: *__/s/ Jodi E. Lopez__*

Jodi E. Lopez
jlopez@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street
Los Angeles, CA 90013
Tel: (213) 896-6000
Fax: (213) 896-6600

*Attorneys for Beacon Sales Acquisition, Inc.*